**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TIFFANY ROBERTS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-9423** |
| **STEPHEN METZINGER** | **SECTION: "G"(2)** |

## ORDER AND REASONS

This litigation arises out of Plaintiff Tiffany Robert's ("Plaintiff") claim for malicious prosecution against Defendant Dr. Stephen Metzinger ("Defendant").[1] Before the Court is Defendant's "Motion for Summary Judgment."[2] In the instant motion, Defendant argues that Plaintiff cannot prove the required elements of her malicious prosecution claim.[3] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the instant motion.

## I. Background

On October 11, 2018, Plaintiff filed a Complaint against Defendant on behalf of herself and her minor children, W.H.S., Jr. and I.S.R.[4] In the Complaint, Plaintiff alleges that Defendant is the sole member of Aesthetic Surgical Associates, LLC ("Aesthetic") and the majority member

---

[1] Rec. Doc. 2.

[2] Rec. Doc. 34.

[3] *Id.*

[4] Rec. Doc. 2.

of Dolce Bellissimo, LLC ("Dolce").[5] Defendant employed Plaintiff and another employee, Norma

Mahler ("Ms. Mahler"), to help manage Aesthetic.[6] Plaintiff alleges that Defendant "maintained a

hostile work environment where he sexually harassed the two women."[7] Plaintiff filed a sexual

harassment complaint with the Equal Employment Opportunity Commission ("EEOC") in January

2015.[8] Defendant allegedly terminated Plaintiff's employment on January 12, 2015.[9]

Thereafter, from January 13, 2015 until June 2018, Defendant allegedly "made numerous

false and defamatory statements to members of the Jefferson Parish Sheriff's Office ("JPSO"),

Jefferson Parish District Attorney's Office ("JPDA"), and others about [Plaintiff]."[10] The false

statements supposedly included accusations that Plaintiff completed unauthorized transactions

with the Dolce credit card, performed unsanctioned procedures on patients at Aesthetic,

fraudulently cashed checks, and stole office products and supplies.[11] Plaintiff claims that

Defendant made such statements to retaliate against Plaintiff for her EEOC complaint.[12]

Defendant's purported false statements resulted in Plaintiff's arrest and prosecution on charges of

---

[5] *Id.* at 2.

[6] *Id.*

[7] *Id.*

[8] *Id.* Plaintiff maintains that the EEOC issued a right to sue letter and she and Ms. Mahler filed an employment discrimination suit in the Eastern District of Louisiana in 2015. Plaintiff states that she and Ms. Mahler dismissed the suit because the defendants did not meet the federal statute requirements, not because their claims lack substantive merit.

[9] *Id.*

[10] *Id.* at 3.

[11] *Id.*

[12] *Id.*

theft and possession of Clonazepam.[13] Yet, on June 22, 2018, JPDA supposedly entered a *nolle prosequi* and dismissed all criminal charges against Plaintiff.[14]

Plaintiff alleges that Defendant also filed a civil action against Plaintiff and Ms. Mahler in state court.[15] Plaintiff allegedly endured financial difficulties because of Defendant's civil suit in state court and JPDA's criminal charges.[16] Indeed, Plaintiff states that she paid an attorney to represent her in state court for both the criminal and civil cases initiated by Defendant.[17] Plaintiff claims that she suffered lost wages and work opportunities defending herself against Defendant's false allegations.[18] Plaintiff also claims that she lost two houses because lost wages rendered her unable to pay each house's mortgage.[19] Finally, Plaintiff claims that her two children suffered mental and emotional harm due to Defendant's false allegations.[20]

For those reasons, Plaintiff brings claims against Defendant for malicious prosecution and loss of consortium and emotional distress on behalf of her children pursuant to Louisiana Civil Code article 2315 ("Article 2315").[21] On January 16, 2019, Defendant filed a motion to dismiss

---

[13] *Id.* at 3–4.

[14] *Id.* at 5.

[15] *Id.* at 4.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 5.

[21] *Id.* at 5–6.

this case.[22] On February 13, 2019, the Court held oral argument on Defendant's motion to dismiss this case.[23] On April 3, 2019, the Court denied Defendant's motion to dismiss because Plaintiff pleaded sufficient facts to state a claim for a malicious prosecution claim.[24] The Court did not address Plaintiff's loss of consortium and emotional distress claims.[25]

On November 5, 2019, Defendant filed the instant motion for summary judgment.[26] On November 13, 2019, Plaintiff filed an opposition to the instant motion and requested oral argument.[27] On November 15, 2019, the Court granted Plaintiff's oral argument request.[28] On November 18, 2019, Defendant filed a reply brief, with leave of court, in further support of the instant motion.[29] On November 20, 2019, the Court held oral argument on the instant motion.[30]

## II. Parties' Arguments

### A. *Defendant's Arguments in Support of the Motion for Summary Judgment*

In the instant motion, Defendant argues that Plaintiff must prove six elements to establish malicious prosecution.[31] Those six elements are:

---

[22] Rec. Doc. 15.

[23] Rec. Doc. 21.

[24] Rec. Doc. 26.

[25] *Id.*

[26] Rec. Doc. 34.

[27] Rec. Doc. 37.

[28] Rec. Doc. 39.

[29] Rec. Doc. 40.

[30] Rec. Doc. 41.

[31] Rec. Doc. 34-1 at 14.

(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against the plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff.[32]

Here, Defendant argues only that Plaintiff cannot prove element four (lack of probable cause) and element five (presence of malice).[33] The Court will summarize each argument in turn.

### 1.    Lack of Probable Cause

Defendant argues that the record evidence unequivocally established the presence of probable cause for Defendant to press charges against Plaintiff.[34] Defendant contends that the "existence of probable cause . . . does not depend merely upon the actual state of facts."[35] Instead, according to Defendant, the "crucial determination is whether Defendant had an honest and reasonable belief in the guilt of Plaintiff at the time he pressed charges."[36]

First, Defendant allegedly believed that Plaintiff made unauthorized credit card transactions with the Dolce credit card.[37] Defendant alleges that $13,177.39 in unauthorized transactions were made with the Dolce credit card from April 2011 until November 2014.[38] Those

---

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *See id.* at 15.

[38] *Id.* at 18.

transactions purportedly involved a tanning machine, tanning products, food, ACT prep courses, chiropractor services, and other items and services.[39] One transaction allegedly included tanning products shipped directly to Plaintiff's home.[40] Because Plaintiff and Ms. Mahler both had access to the Dolce credit card and, were planning to open a tanning salon, Defendant believed that Plaintiff was the perpetrator.[41]

Second, Defendant allegedly believed that Plaintiff "misappropriated Dolce assets and issued herself distributions in excess of her share and in violation of [Dolce's] operating agreement."[42] Pursuant to Dolce's operating agreement, distribution of assets shall be proportionate to each owner's respective share.[43] Plaintiff owned 24.5% of Dolce while employed by Defendant.[44] Nevertheless, Defendant claimed that Plaintiff paid herself, Ms. Mahler, and Defendant each at the rate of 33.3% on certain occasions.[45] Defendant also claimed that Plaintiff sometimes paid herself and Ms. Mahler each at the rate of 50% on other occasions, leaving Defendant with no disbursement whatsoever.[46]

Third, Defendant allegedly believed that "Plaintiff wrote in 'cash discount' on [patients']

---

[39] *Id.* at 4, 18.

[40] *Id.* at 17.

[41] *Id.* at 9–10.

[42] *Id.* at 20.

[43] *Id.* at 5.

[44] *Id.*

[45] *Id.*

[46] *Id.*

forms without Defendant's consent."[47] An Aesthetic patient, named Valerie Bon-Mardion, told Defendant she suspected that Plaintiff was giving unauthorized cash discounts and keeping the money for herself.[48]

Finally, Defendant allegedly believed that Plaintiff curtailed patients' Ultherapy treatment.[49] Defendant's Ultherapy treatment logs indicated that 5,402 lines of ultrasound treatment were either unauthorized or uncharted.[50] Defendant submits the deposition of Chantel Babin, the employee who replaced Ms. Mahler, which states that patients were inquiring about receiving Ultherapy treatment at their homes.[51] This apparently led Defendant to believe that Plaintiff had engaged in the improper administration of Ultherapy at patients' homes.[52] For those reasons, Defendant concludes that he had an honest and reasonable belief that Plaintiff committed theft when he pressed charges.[53] Therefore, Defendant urges this Court to grant summary judgment on the probable cause element because there is no evidence to support Plaintiff's claim that Defendant lacked probable cause to press charges against Plaintiff.[54]

### 2. Malice

Next, Defendant argues that he did not act with malice when he pressed charges against

---

[47] *Id.* at 16.

[48] *Id.*

[49] *Id.* at 20.

[50] *Id.* at 7.

[51] *Id.* at 6.

[52] *Id.*

[53] *Id.* at 23.

[54] *Id.*

Plaintiff.[55] Under Louisiana law, malice is present when a person brings criminal or civil proceedings and either (1) acts with "hatred, animosity or ill will toward the plaintiff," (2) seeks to gain a private advantage, or (3) knowingly makes false allegations or acts with reckless disregard for the allegations' truth.[56] Malice may also be inferred from (4) lack of probable cause to bring the proceedings against the plaintiff.[57]

Defendant first contends that he did not have any "hatred, animosity or ill will toward the plaintiff."[58] Defendant claims that he did not retaliate against Plaintiff for filing a complaint with the EEOC.[59] As support, Defendant notes that he "reported his suspicions to the JPSO on February 13, 2015, more than six weeks *prior* to the filing of [Plaintiff's] Charge of Discrimination" with the EEOC.[60]

Next, Defendant contends that he obtained no private advantage by filing charges against Plaintiff.[61] Instead, Defendant allegedly incurred attorney fees because of the civil and criminal litigation against Plaintiff.[62] Defendant also allegedly lost valuable revenue from canceled surgeries due to Defendant being "subpoenaed eleven times to appear for court in the criminal

---

[55] *Id.* at 21.

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.* at 22.

[62] *Id.*

matter."[63]

Finally, Defendant contends that Plaintiff cannot prove he knowingly made false allegations to JSPO or made such allegations with reckless disregard for the allegations' truth.[64] As support, Defendant cites Detective Stephen Trapani's statement that "[Defendant] didn't engage in any false allegations against [Plaintiff]."[65] For those reasons, Defendant insists that Plaintiff cannot prove any of the variants of malice.[66] Defendant thus urges this Court to grant summary judgment on the malice element.[67]

## B.     *Plaintiff's Opposition to the Motion for Summary Judgment*

In opposition, Plaintiff argues that a genuine dispute of material fact exists concerning whether Defendant had probable cause to press charges and whether he acted with malice when he pressed charges.[68] Plaintiff also argues that this Court should strike several declarations relied upon by Defendant because those statements are unsworn, inauthentic, and hearsay.[69] Finally, Plaintiff notes that Defendant does not address Plaintiff's claims under Article 2315.[70] The Court will summarize each argument in turn.

---

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at 23.

[67] *Id.*

[68] Rec. Doc. 36 at 8–11.

[69] *Id.* at 6.

[70] *Id.* at 3.

1.      **Lack of Probable Cause**

Plaintiff relies on her own deposition to demonstrate that Defendant lacked probable cause to believe Plaintiff committed theft.[71] The "crucial determination" for probable cause "is whether the defendant had an honest and reasonable belief in the guilt of the plaintiff at the time charges were pressed."[72]

Plaintiff first contends Defendant did not honestly and reasonably believe that Plaintiff made "unauthorized" transactions with the Dolce credit card.[73] Plaintiff argues that Defendant routinely permitted both Plaintiff and Ms. Mahler to complete non-business transactions with the Dolce credit card.[74] Plaintiff argues that the routine permission negates any honest and reasonable belief Defendant may have had when reporting the credit card transactions as unauthorized.[75] For instance, despite allegedly authorizing Ms. Mahler to purchase catering for her husband's funeral with the Dolce credit card, Defendant listed that charge as unauthorized when he pressed charges against Plaintiff.[76]

Second, Plaintiff contends Defendant did not honestly and reasonably believe that Plaintiff misappropriated Dolce assets or stole such assets with checks written out to "cash."[77] Plaintiff testifies that she received verbal authorization from Defendant to allocate Dolce's assets in each

---

[71] Rec. Doc. 36.

[72] *Craig v. Carter*, 30,625 (La. App. 2 Cir. 9/23/98), 718 So. 2d 1068, 1071.

[73] Rec. Doc. 36 at 8.

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.*

instance.[78] Moreover, Plaintiff contends Defendant knew when she "would write checks to cash and would in fact instruct her how to write each check."[79] Plaintiff allegedly "acted under the direction of [Defendant]," who was the type of person to constantly check his bank statements and "count his penn[ies]."[80]

Third, Plaintiff contends Defendant did not honestly and reasonably believe Plaintiff stole money via "cash discounts" because Defendant "would tell [Plaintiff] when to offer a discount" and "offered a ten percent discount to patients who paid cash."[81]

Finally, Plaintiff contends the curtailed Ultherapy treatments did not provide Defendant with an honest and reasonable belief that she committed theft.[82] Instead, Plaintiff testified that Defendant ordered Plaintiff to "save costs" by not fully completing patients' Ultherapy treatments.[83] Plaintiff testified that "[s]ometimes [Defendant] would tell us not to do a second pass because transducers were expensive, and if we could save the lines by not doing the full treatment, that's what we did."[84]

## 2. Malice

Malice is present when a person brings criminal or civil proceedings and either (1) acts with "hatred, animosity or ill will toward the plaintiff," (2) seeks to gain a private advantage, or

---

[78] Rec. Doc. 36-2 at 81.

[79] *Id.*

[80] *Id.*

[81] *Id.* at 8–9.

[82] *Id.* at 9.

[83] Rec. Doc. 36-2 at 70

[84] *Id.*

(3) knowingly makes false allegations or acts with reckless disregard for the allegations' truth.[85] Malice may also be inferred from (4) the lack of probable cause to bring proceedings against the plaintiff.[86]

Plaintiff appears to argue that the first and third circumstances are present.[87] Plaintiff argues that Defendant pressed charges against her, in retaliation, for filing a sexual harassment complaint with the EEOC.[88] Moreover, Plaintiff contends Defendant knowingly made false allegations to JSPO about Plaintiff committing theft.[89] Thus, Plaintiff concludes that summary judgment is not appropriate on the malice element.[90]

### 3. Article 2315 Claims

Plaintiff notes that "[D]efendant does not address [Plaintiff's] claims under La. C.C.P. art. 2315 and only alleges that there is no genuine issue of material fact[] because the plaintiff cannot prove that [Defendant] filed a criminal charge without probable cause and with malice."[91] Accordingly, Plaintiff does not address her Article 2315 claims in the instant opposition. The Article 2315 claims appear to involve loss of consortium and emotional distress on behalf of Plaintiff's children.[92]

---

[85] *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453 (La. 1987).

[86] *Id.*

[87] Rec. Doc. 36 at 9–10.

[88] *Id.* at 10

[89] *Id.*

[90] *Id.*

[91] *Id.* at 3.

[92] Rec. Doc. 2 at 6–7.

### 4.     Unsworn Statements

Finally, Plaintiff argues that Defendant "attempted to support[] his Motion with evidence that is not competent."[93] According to Plaintiff, a sworn declaration must state: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct."[94] Plaintiff contends the sworn statement must also "include the date the declaration was executed and a signature."[95] Plaintiff points to Fifth Circuit caselaw rejecting unsworn statements on summary judgment:

> It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment. A statutory exception to this rule exists under 28 U.S.C. 1746, which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'[96]

Plaintiff contends that Kimberly Perdomo's statement and Valierie Bon-Mardion's statement—relied upon by Defendant—do not "state that the information contained in the statement are true and correct under penalty of perjury."[97] In addition, Plaintiff contends the statements are hearsay and have not been authenticated.[98] For those reasons, Plaintiff urges this Court to strike those statements and not consider them on summary judgment.[99]

---

[93] *Id.* at 4.

[94] *Id.*

[95] *Id.*

[96] *Id.* (quoting *Nisshio-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306–07 (5th Cir. 1988)).

[97] *Id.* at 5.

[98] *Id.*

[99] *Id.* at 6.

## C.       Defendant's Reply to Plaintiff's Opposition.

In reply, Defendant further elaborates why Plaintiff fails to demonstrate a genuine issue of material fact on the probable cause and the malice elements.[100] First, Defendant argues that Plaintiff's opposition simply presented red herrings in an attempt to manufacture a dispute regarding probable cause.[101] For example, Defendant notes that Plaintiff "claims that Defendant instructed her not to complete the entire Ultherapy treatment in the interest of saving money."[102] Defendant's denial of that allegation supposedly "does not create a disputed issue of fact concerning probable cause on Ulthera because there is still evidence that Plaintiff treated patients with no corresponding patient chart."[103] Additionally, despite Plaintiff's testimony that Defendant authorized her transactions with the Dolce credit card, Defendant notes that "Plaintiff testified that the Defendant was reasonable for being suspicious of [the tanning-supply charge]."[104]

Second, with respect to malice, Defendant argues that Plaintiff failed to establish a genuine issue of material fact.[105] Defendant claims "Plaintiff now seeks to establish malice by claiming that the Defendant was angry after receiving a demand for severance pay on January 26, 2015."[106], Defendant also claims "[he] offered Plaintiff severance pay on her last day of employment on

---

[100] Rec. Doc. 40-2.

[101] *Id.* at 2.

[102] *Id.* at 7.

[103] *Id.*

[104] *Id.* at 5.

[105] *Id.* at 8.

[106] *Id.*

January 12, 2015."[107] Thus, according to Defendant, "[i]t is inconceivable how Plaintiff can construe malice over the negotiation of a severance package that was first offered by Defendant himself."[108]

Finally, Defendant briefly argues that "public policy commands summary judgment" in this case.[109] Defendant contends that malicious prosecution claims are disfavored under Louisiana law.[110]

## III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[111] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[112] All reasonable inferences are drawn in favor of the nonmoving party. Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[113] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then

---

[107] *Id.*

[108] *Id.*

[109] *Id.* at 10.

[110] *Id.*

[111] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[112] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[113] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[114] The nonmoving party may not rest upon the pleadings. Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[115]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[116] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[117] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports the nonmoving party's claims.[118] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[119]

---

[114] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[115] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[116] *Celotex*, 477 U.S. at 323.

[117] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[118] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[119] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[120] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[121] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.

## IV. Analysis

### A.   Whether Summary Judgment is Appropriate for Plaintiff's Malicious Prosecution Claim

Defendant urges this Court to grant summary judgment on Plaintiff's malicious prosecution claim. Under Louisiana law, the elements of a malicious prosecution claim are:

> (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.[122]

Defendant concedes that elements one, two, three, and six are satisfied for purposes of the instant motion.[123] Defendant argues, however, that Plaintiff cannot prove element four (the absence of probable cause) and element five (the presence of malice).[124] Accordingly, the Court will analyze only whether a genuine issue of material fact exists for elements four and five.

---

[120] *Little*, 37 F.3d at 1075.

[121] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992)).

[122] *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15); 168 So. 3d 362, 368 (quoting *Jones v. Soileau*, 448 So.2d 1268, 1271 (La.1984)).

[123] Rec. Doc. 34 at 14.

[124] *Id.*

1.      **Lack of Probable Cause**

Under Louisiana law, "[p]robable cause depends not merely upon the actual state of the facts in the case, but upon the defendant's honest belief of the facts when making the charge against the plaintiff.[125] The "crucial determination" for probable cause "is whether the defendant had an honest and reasonable belief in the guilt of the plaintiff at the time charges were pressed."[126] Furthermore, "the dismissal of the prosecution gives rise to the presumption of a lack of probable cause and shifts [the] burden to the defendant[] to show that [defendant] acted on probable cause and without malice."[127]

Here, both parties agree that JPDA dismissed all criminal charges against Plaintiff.[128] Therefore, this Court must presume that Defendant did not have probable cause to initiate proceedings against Plaintiff. Moreover, this Court must place the burden on Defendant to demonstrate that he acted with probable cause when he pressed charges against Plaintiff. To meet that burden, Defendant mostly points to four circumstances establishing his reasonable belief of Plaintiff's theft: (1) unauthorized purchases with the Dolce credit card, (2) misappropriation of Dolce assets, (3) cash discounts, and (4) curtailed Ultherapy treatment.[129]

First, regarding the unauthorized credit card transactions, Defendant submitted an itemized transaction report showing several non-business transactions were made with the Dolce credit

---

[125] *Craig*, 718 So. 2d at 1071.

[126] *Id.*

[127] *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03), 862 So. 2d 1139, 1143.

[128] Rec. Doc. 34-1 at 11; Rec. Doc. 36 at 3.

[129] Rec. Doc. 34-1.

card.[130] Those transactions included supplies for a tanning salon.[131] Because Plaintiff both planned to open a tanning salon and maintained access to the Dolce credit card, Defendant claims that he formed an honest and reasonable belief that Plaintiff made the unauthorized credit card transactions at issue. Moreover, Defendant points to the excerpt below from Plaintiff's deposition:

> Q. Don't you think that [Defendant] was reasonable in being suspect of you ordering [tanning] products on his American Express on January 12th, 2015 that were sent to your home?
>
> A. Yes[132]

On the other hand, Plaintiff testified that Defendant gave her permission to complete non-business transactions with the Dolce credit card, including charges for food, clothing, and other items and services.[133] Thus, if the jury believes that Defendant verbally authorized Plaintiff to routinely make non-business transactions with the Dolce credit card, the jury could reasonably conclude that Defendant did not honestly and reasonably believe the credit card transactions, including the tanning supplies, constituted theft. Plaintiff admits that Defendant's suspicion—that Plaintiff made the tanning-supply purchase—was "reasonable." But the jury could find that Defendant in fact authorized the purchase. Plaintiff's admission does not entail a concession that the tanning-supply charge was unauthorized. Thus, there are disputed issues of material fact, which prevent this Court from granting summary judgment on this issue.[134]

---

[130] Rec. Doc. 34-7 at 56; Rec. Doc. 34-9 at 56.

[131] Rec. Doc. 34-10 at 355.

[132] *Id.*

[133] Rec. Doc. 36-2 at 90, 94, 97.

[134] Defendant also allegedly believed that Plaintiff stole drugs from Aesthetic's office. Yet Plaintiff testified that Defendant gave her drugs for home administration. *See* Rec. Doc. 34-10 at 168. Defendant even concedes that Plaintiff was a patient of Aesthetic. *See* Rec. Doc. 34-1 at 16. Thus, disputed issues of fact remain concerning whether

Second, with respect to misappropriation of Dolce assets, Defendant states that Plaintiff, Ms. Mahler, and Defendant each owned a portion of Dolce.[135] Pursuant to Dolce's operating agreement, any distributions of Dolce assets were to be proportionate to the owner's respective share.[136] Plaintiff testified that she was entitled to 24.5% of Dolce assets while employed by Defendant.[137] Yet, according to Plaintiff's deposition testimony, she compensated herself, Ms. Mahler, and Defendant each at the rate of 33.3% on certain occasions.[138] Plaintiff also testified that she compensated herself and Ms. Mahler each at the rate of 50% on occasions, leaving Defendant with no disbursement whatsoever.[139] Defendant, citing the operating agreement, points out that any amendment to the disbursement arrangement must be in writing.[140]

Plaintiff admits that she disbursed income in a manner inconsistent with each owner's respective share.[141] Yet, according to Plaintiff, she "wrote the checks as [Defendant] told [her] to write them."[142] Although the operating agreement requires disbursement modifications to be in writing, a reasonable jury could believe that Defendant's verbal authorization of the distributions

Defendant honestly believed that Plaintiff stole drugs from Aesthetic.

[135] Rec. Doc. 34-1 at 5.

[136] Rec. Doc. 34-9 at 31.

[137] Rec. Doc. 36-2 at 81.

[138] *Id.*

[139] Rec. Doc. 34-9 at 83–85.

[140] Rec. Doc. 43 at 3.

[141] Rec. Doc. 36-2 at 81.

[142] *Id.*

negated any *honest* and *reasonable* belief that Plaintiff committed theft. Therefore, there are disputed issues of material fact precluding summary judgment on this issue.

Third, concerning the cash discounts, Defendant testified in his deposition that someone wrote "cash discount" on patients' forms without Defendant's consent.[143] Plaintiff, on the other hand, testified that Defendant would prepare marketing schemes to obtain more patients and would tell Plaintiff when to offer discounts.[144] Plaintiff also testified that Defendant offered a ten percent discount to patients who paid in cash.[145] Thus, with each party pointing to record evidence to explain the "cash discounts" on patients' forms, a genuine issue of material fact exists regarding whether Defendant honestly and reasonably believed that Plaintiff stole money through cash discounts.[146]

Fourth, concerning the curtailed Ultherapy treatment, Defendant points to the Ultherapy treatment logs as evidence of Plaintiff's theft. Those treatment logs indicate that 5,402 lines of ultrasound treatment were unauthorized or uncharted.[147] Defendant submits the testimony of Chantel Babin, an employee of Aesthetic, to demonstrate that Aesthetic's patients inquired about receiving Ultherapy treatments at their homes.[148] Chantel Babin's declaration apparently indicated

---

[143] Rec. Doc. 34-4 at 296–97.

[144] Rec. Doc. 36-2 at 61–62.

[145] *Id.* at 63.

[146] Defendant also points to evidence that Plaintiff entered almost no data into QuickBooks for 2014. Rec. Doc. 34-1 at 4 (citing Rec. Doc. 34-5). Yet Plaintiff testified that Defendant controlled what information and accounting went into QuickBooks and would instruct Plaintiff to make Defendant appear "poor." Rec. Doc. 36-2 at 106. Thus, a disputed issue of fact remains concerning whether Defendant honestly believed the lack of information in QuickBooks indicated theft or embezzlement.

[147] Rec. Doc. 34-7 at 56.

[148] Rec. Doc. 34-6 at 3.

that Plaintiff was treating individuals who were not scheduled as patients of Aesthetic or Dolce.[149] Ms. Babin testified that the Ultherapy patient charts included "[s]everal entries [that] were falsified with initials and not on the schedule" to receive Ultherapy treatment.[150]

On the other hand, Plaintiff testified that she and Ms. Mahler "did what [they] were told by Dr. Metzinger" and that "[i]f he told us to do X number of lines, we did X number of lines."[151] Defendant allegedly ordered Plaintiff "not to do a second pass [on patients] because transducers were expensive."[152] Thus, according to Plaintiff's testimony, under Defendant's direction, Plaintiff "save[d] lines by not doing the full treatment" and performed the treatments under the direction of Defendant.[153] Plaintiff's sworn testimony raises a genuine issue of material fact for the jury to decide: whether Defendant honestly and reasonably believed Plaintiff curtailed Ultherapy treatments and exploited the remaining Ulthera lines without Defendant's consent. Indeed, because the JPDA dismissed all criminal charges against Plaintiff, this Court must presume that Defendant did not have probable cause to initiate proceedings against Plaintiff. Moreover, the jury must decide whether Defendant's evidence overcomes the presumption that he lacked probable cause when pressing charges against Plaintiff. Summary judgment is therefore not appropriate on the probable cause element.[154]

---

[149] Rec. Doc. 34-1 at 6; Rec. Doc. 34-6 at 3.

[150] Rec. Doc. 34-6 at 2.

[151] Rec. Doc. 36-2 at 76.

[152] *Id.* at 70.

[153] *Id.*

[154] Defendant represents that multiple government officials found probable cause to believe Plaintiff committed the alleged crimes. Rec. Doc. 34-1 at 15. Yet, under the malicious prosecution test, the probable cause element is based upon whether the specific defendant "had an honest and reasonable belief in the guilt of the plaintiff at the time the

## 2. Malice

The "determination of malice in a malicious prosecution case is a question of fact."[155] Louisiana courts permit the malice element to be proven in several ways.[156] Malice is present when a person brings criminal or civil proceedings and either (1) acts with "hatred, animosity or ill will toward the plaintiff," (2) seeks to gain a private advantage, or (3) knowingly makes false allegations or acts with reckless disregard for the allegations' truth.[157] Malice may also be inferred from (4) the lack of probable cause to bring proceedings against the plaintiff.[158] Furthermore, when the charges against the plaintiff are dismissed, the burden shifts to the defendant to show that he acted without malice.[159] Here, because both parties agree that the criminal charges against Plaintiff were dismissed, Defendant has the burden to show that he acted without malice.

First, Defendant submits Detective Steve Trapani's testimony to show his lack of malice toward Plaintiff.[160] Detective Trapani testified that Defendant did not retaliate against Plaintiff when he pressed charges against Plaintiff.[161] Second, Defendant testified that he did not obtain any private advantage from pressing charges against Plaintiff.[162] Defendant instead testified in his

---

charges were pressed." *Craig*, 718 So. 2d at 1071. Thus, the only relevant inquiry is whether Defendant honestly and reasonably believed that he had probable cause to press charges against Plaintiff.

[155] *Miller*, 511 So. 2d at 453.

[156] *Id.*

[157] *Id.*

[158] *Id.*

[159] *Hope*, 862 So. 2d at 1143.

[160] Rec. Doc. 34-1 at 22.

[161] Rec. Doc. 34-7 at 89.

[162] *See* Rec. Doc. 34-4 at 214–15, 225.

deposition that he incurred attorney fees and canceled expensive surgeries due to scheduled court proceedings.[163] Finally, Defendant argues that he did not make any false allegations against Plaintiff. As support, Defendant submits Detective Trapani's deposition testimony that Defendant did not engage in false allegations when he pressed charges against Plaintiff.[164]

On the other hand, Defendant concedes that he pressed charges against Plaintiff after she demanded severance pay,[165] which could result in a finding of "animosity" or "ill will" toward Plaintiff. Furthermore, Plaintiff testified that Defendant authorized several non-business transactions with the Dolce credit card, which Defendant subsequently reported as unauthorized when he pressed charges.[166] That testimony entails record evidence that Defendant knowingly made false allegations against Plaintiff. In sum, because each party points to record evidence regarding whether Defendant acted with malice, a genuine issue of material fact remains concerning the malice element. Summary judgment is therefore not appropriate on the malice element.

### 3. Plaintiff's Request to Strike Statements of Kimberly Perdomo and Valerie Bon-Mardion

Finally, Plaintiff argues that Defendant "attempted to support[] his Motion with evidence that is not competent."[167] Yet, because the Court deems summary judgment inappropriate—

---

[163] *Id.*

[164] Rec. Doc. 34-7 at 89.

[165] Defendant concedes that he received Plaintiff's demand for severance before Defendant pressed charges against Plaintiff. *See* Rec. Doc. 43 at 9.

[166] Rec. Doc. 36-2 at 88, 90.

[167] Rec. Doc. 36 at 5.

regardless of the purported inadmissible statements—the Court need not entertain Plaintiff's arguments that the statements of Kimberly Perdomo and Valerie Bon- Mardion should be stricken.

### V. Conclusion

Based on the foregoing, there are genuine issues of material fact in dispute precluding summary judgment on the probable cause and malice elements of Plaintiff's malicious prosecution claim. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Stephen Metzinger's "Motion for Summary Judgment"[168] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this  11th  day of December 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[168] Rec. Doc. 34.